### In re REMBERT TRUST.

No. 73-140-CP.

Circuit Court, Martin County.

September 20, 1973.

William F. Crary of Heiman & Crary, Stuart, for the trustee.

JAMES E. ALDERMAN, Circuit Judge.

*Order construing trust provision:* Florida K. Rembert died April 18, 1970; her husband, Ivan T. Rembert having predeceased her. Mr. and Mrs. Rembert left a joint will which provided for the

establishment of a testamentary trust. First National Bank and Trust Company of Stuart was appointed executor of her estate and after being discharged as executor was qualified as trustee of this testamentary trust by order of this court dated November 20, 1972.

The trustee has now petitioned the court for an order construing paragraph Fourth (B) of the testamentary trust which provides as follows —

"The income from said trust, not to exceed Twenty-five Hundred Dollars for any one person, shall be paid by said Trustee to selected white male graduates of Martin County High Shcool for the purpose of said graduates receiving higher education. Such graduates shall be selected in writing by the Trust Officer of said bank, the Sheriff of Martin County, and the Principal of such High School."

In its motion requesting construction of this provision, the trustee suggests that the provisions of said trust requiring that scholarships be awarded to white male graduates is unconstitutional and accordingly should not be followed in the administration of this trust.

Petitioner's attorney argues that a testamentary trust cannot be used as a vehicle to establish scholarships for the benefit of a limited class and that the provision in question limiting scholarships to white male graduates of Martin County High School is in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.

The right of a testator to establish a charitable trust to promote education by the granting of scholarships has long been recognized even where the persons eligible to receive the scholarships are of a limited class. It has been said by no less an authority that Professor Scott in his treatise on the law of trusts that —

". . . a trust for education is none the less charitable although the persons to receive the education are of a limited class, if the class is not so small that the purpose is not of benefit to the community. Thus a trust for the education of children living in a certain district is charitable. So is a trust to educate persons of a particular race or sex or religion. So is a trust to educate persons of a particular profession or trade or of a particular social class. Similarly, the beneficiaries of a scholarship may be limited to persons living in a particular place or belonging to a certain class." *Scott on Trusts,* Vol. 4, 2nd Edition, §370.6.

However, there appear to be no United States Supreme Court decisions ruling directly on the point of whether a testamentary trust such as the one here in question violates the equal protection clause, although recent Supreme Court cases have dealt with testamentary trusts.

Commonwealth of Pa. v. City of Philadelphia, 353 U.S. 230, 1 L.Ed.2d 792, 77 S.Ct. 806, commonly referred to as the Girard College Case, was decided in 1957. In that case, Mr. Girard by his will, probated in 1831, left a fund in trust for the erection, maintenance and operation of a "college". The will provided that the college was to admit as many poor white male orphans between the ages of 6 and 10 years as the trust income shall be adequate to maintain. The city of Philadelphia was named trustee and eventually put the trusteeship in a city agency. Two negro boys having been denied admission to the school because of their race sought relief in the courts. An adverse ruling against them by the Pennsylvania Supreme Court was reversed by the Supreme Court of the United States. The ground of reversal was that the city board, being a public agency was forbidden by the equal protection clause to administer a racially discriminatory school. On its face, the decision was quite narrow. It did no more than forbid public agencies to serve as trustees for racially discriminatory trusts. Some authorities however thought it possible that the court was indicating its readiness to take a much larger step. It was suggested that any racial discrimination by any testamentory trust was prohibited because the state probate court is obligated to supervise the trust and compel the trustee to administer it according to the testator's directions. That the court was not willing to go that far became apparent when the Philadelphia Orphans Court responded to the court's decision, not by desegrating Girard College but by replacing the public trustee with a group of private trustees. Again review was sought in the Supreme Court but this time certiorari was denied. 357 U.S. 570, 2 L.Ed.2d 1546, 78 S.Ct. 1383.

In 1966, the Supreme Court had a case involving the will of former U. S. Senator Augustus Octavius Bacon of Georgia, who died in 1914. Evans v. Newton, 382 U.S. 296, 15 L.Ed.2d 373, 86 S.Ct. 486. Senator Bacon devised a remainder interest in Baconsfield, his estate of about one hundred acres in the city of Macon, to the city as trustee. The trustee was directed to hold the land in perpetuity as a park for white persons only. In 1963, some negroes requested admission to the park, pointing out that even under the narrow interpretation of the Girard College Case, the equal protection clause forbade the city to exclude them. The city tendered its resignation as trustee and the probate court appointed private trustees.

On writ of certiorari to the United States Supreme Court, Justice Douglas expressing the views of five members of the court held that the public character of the park required that it be treated as a public institution subject to the command of the fourteenth amendment, regardless of who presently had title under state law. The

court plainly was not prepared to adopt the broad view that the equal protection clause applies to any trust that is testamentary or charitable, or both. Instead of saying that enforcement of the trust by the probate court was "state action", Justice Douglas emphasized "the public character" of parks. "Mass recreation through the use of parks", he declared, "is plainly in the public domain." By way of dicta Justice Douglas in his opinion impliedly recognized that a testamentary·trust may be used for the benefit of a limited class when he stated —

> "If a testator wanted to leave a school or center for the use of one race only and in no way implicated the state in the supervision, control or management of that facility, we assume arguendo that no constitutional difficulty would be encountered."

It has long been recognized that the equal protection clause reaches only discriminations that are the product of state actions; it does not touch discriminations whose origins and effectuation arise solely out of individual predilections, prejudices and acts. Civil Rights Case, 109 U.S. 3, 27 L.Ed. 836, 3 S.Ct. 18 As stated by Mr. Justice Black in his dissenting opinion in Evans v. Newton, supra —

> "So far as the fourteenth amendment is concerned, the curtailing of private discriminatory acts, to the extent they may be forbidden at all, is a matter that is left to the states acting within the permissible range of their police power."

Referring to the trust here in question, there is without doubt discrimination by the limitation of the scholarships to white male graduates of Martin County High School. The issue before the court, however, is not simply to determine whether or not there is discrimination, but whether it is an unlawful and prohibited form of discrimination. If this is a case of "private discrimination" and is not the product of state action, then it is not prohibited by the equal protection clause of the fourteenth amendment. The issue before the court really is whether or not there can be any discrimination in a trust such as this. If this particular trust is in violation of the equal protection clause, then any similar trust which discriminates on the basis of the race or sex of the beneficiary would be prohibited.

It may be argued that such a trust as this is against the public interest in that it enables a property owner to impose his own attitudes on future generations without any possibility of modifying his views from time to time: It has been said that the dead hand is a hand which does not have a live mind controlling it and making a continuously informed intelligent judgement if circumstances change and it can no longer be affected by the opinions of mankind.

A trustee who is bound to carry out discriminatory directions is not able to accept the social responsibility that ordinarily accompanies the ownership of property. He cannot respond to social pressures that might sway him if he owned the property outright. *National Policy and the Dead Hand: The Race Conscious Trust,* article by Louis Lusky published in August 1973 issue of *Trusts and Estates,* page 554.

However, the question before the court is not whether the trust provisions are in accordance with current social philosophy. The legal question would be the same if the trust provided scholarships limited to black, female graduates of Martin County High School, or members of the Seminole Indian Tribe living in Martin County. The fact that there is discrimination does not in itself make the trust invalid. The question is whether the state's involvement in the enforcement of the testamentary trust through the probate court is sufficient state action to invoke the equal protection clause. We are not dealing here with a scholarship set up or administered by the state or any other instrumentality of government. It is clear that the state of Florida, or other instrumentality of government could not establish or administer as trustee such a discriminatory trust. Beyond doubt that would be state action which is prohibited by the equal protection clause. In this case, however, the state did not establish and is not administering the trust which sets up the scholarship. The state is only indirectly involved in enforcing the terms of the trust. The elements of racial and sexual discrimination in this trust were injected by private parties, not by the state. In the court's opinion this is not sufficient state involvement or state action to invoke the equal protection clause and thereby make a trust such as this unconstitutional. To hold otherwise would be to say that no testator attempting to establish a charitable trust could in any way limit the class of people who would benefit from the trust.

If testamentary charitable trusts such as this are against public policy and not in the best interest of the community, then they may be prohibited by legislative action, but for this court to say that a testamentary trust such as this is unconstitutional would be an unwarranted alteration of our present law. The prejudices of Mr. and Mrs. Rembert in establishing this trust may be obnoxious to most people, but it is a right which the court feels any testator has under our existing law. If this is wrong, then the legislature may remedy the situation by placing limitations upon the rights of testators to establish such trusts.

The court having considered the petition of First National Bank and Trust Company of Stuart for an order construing the trust

134

provisions referred to above and the court having considered this matter and being fully advised in the premises, the court hereby determines that paragraph Fourth (B) of the trust under the joint will of Ivan T. Rembert and Florida K. Rembert is not in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.